## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CRYSTAL MERRITT, JOHNNY MERRITT, CHRISTOPHER BAUDOUIN, and CHRISTIAN ALEXANDER FLORES HERNANDEZ, on behalf of themselves and others similarly situated, <br><br>              Plaintiffs, <br><br>       v. <br><br> OZI 4 DELIVERY, INC., MOR 1 CORP., ANTILLANA & METRO GROCERY STORE, CORP., JOHN DOES 1-10, and OSVALDO RODRIGUEZ, in both his individual and professional capacities, <br><br>              Defendants. | Civil Action No.: 23-cv-2212 <br><br> **CLASS AND COLLECTIVE ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Crystal Merritt ("C. Merritt"), Johnny Merritt (J. Merritt), Christopher Baudouin ("Baudouin"), and Christian Alexander Flores Hernandez ("Flores") (together, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorneys, Faruqi & Faruqi, LLP, hereby alleges as follows against Defendants Ozi 4 Delivery, Inc. ("Ozi 4 Delivery"), Mor 1 Corp. ("Mor 1"), Antillana & Metro Grocery Store Corp. ("Antillana"), John Does 1-10 ("John Does") (together, the "Corporate Defendants"), and Osvaldo Rodriguez ("Rodriguez") (collectively, "Defendants"):

## NATURE OF THE CLAIMS

1.     Defendants own and operate several grocery stores in New York City and provide delivery services throughout the tri-state area of New York, New Jersey, and Connecticut.

2.     Defendants act as joint employers, and maintain a staff of hundreds of employees to work in their grocery stores and deliver groceries and other goods to customers.

3.      Defendants commit a litany of wage violations as to all employees in violation of the Fair Labor Standards Act and New York Labor Law.

4.      Defendants employ numerous in-store employees, including, *inter alia*, Cashiers, Baggers, Shelve Stockers, and Greeters.

5.      Defendants pay in-store employees at a flat rate of $300 per week, despite the fact that in-store employees typically work approximately 72 hours a week.

6.      As a result, Defendants pay in-store employees at an effective hourly rate below both the State and federal minimum wage rates.

7.      Further, Defendants employ Delivery Drivers and Helpers, who assist the Delivery Drivers in delivering items sold in Defendants' grocery stores and other goods to Defendants' customers.

8.      Defendants pay Delivery Drivers at a flat rate of $145 per day, and force Delivery Drivers to pay Helpers out of their already unlawfully-low wages—paying the Helpers nothing at all for their work — despite the fact that Delivery Drivers and Helpers work approximately six days per week for a total of 44 hours.

9.      Defendants promise to pay Helpers at a flat rate of $100 per day at some point in the future upon the Helpers' demonstration of sufficient loyalty to Defendants; however, Defendants never specify any criteria or a timeframe for paying Helpers, to the extent they ever decide to pay the Helpers at all.

10.     As a result, Defendants pay Delivery Drivers and Helpers at an effective hourly rate below the applicable State minimum wage rate, and pay Helpers at an effective hourly rate below the federal minimum wage rate.

11.     As noted above, Defendants' employees routinely work well over 40 hours per week; however, Defendants fail to pay them any overtime compensation whatsoever.

12.     Additionally, while Defendants' employees almost always work shifts of 10 consecutive hours or more, Defendants do not pay their employees an additional hour of "spread of hours" pay at the applicable State minimum wage rate.

13.     Defendants also fail to furnish their employees with Notices of Pay Rate and accurate wage statements, as required by law.

14.     Moreover, Defendants' customers often tip Delivery Drivers and Helpers via electronic payment through Defendants' websites.

15.     However, Defendants do not pay Delivery Drivers and Helpers any of the gratuities they earn.

16.     Defendants also require Delivery Drivers and Helpers to cover work-related expenses, such as gas and maintenance costs for Defendants' delivery vans, but fail to reimburse Delivery Drivers and Helpers for those expenses.

17.     Worse yet, when J. Merritt, C. Merritt, and Baudouin complained to Rodriguez about Defendants' unlawful wage practices, Defendants summarily fired them in blatant retaliation for their protected activities.

18.     Plaintiffs bring claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of themselves and all other similarly situated employees comprising the proposed FLSA Collective (defined *infra* ¶ 200).

19.     Further, Baudouin and Flores bring their FLSA claims as a collective action on behalf of themselves and all other similarly situated employees comprising the proposed FLSA Subcollective (defined *infra* ¶ 202).

20.     Plaintiffs also bring claims under the New York Labor Law, N.Y. Lab. Law §§ 1, *et seq.* ("NYLL") as a class action, pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of themselves and all other similarly situated employees comprising the proposed Class (defined *infra* ¶ 212).

21.     Further, J. Merritt, C. Merritt, and Baudouin bring additional NYLL claims as a class action, pursuant to FRCP 23, on behalf of themselves and all other similarly situated employees comprising the proposed Subclass (defined *infra* ¶ 214).

## JURISDICTION AND VENUE

22.     Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiffs' rights under the FLSA.

23.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' related claims arising under State law.

24.     Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

## PARTIES

**A.     Plaintiff Crystal Merritt**

25.     C. Merritt is a resident of the State of New York and was employed by Defendants from in or around December 2021 through in or around February 2022.

26.     At all relevant times, C. Merritt was an "employee" of Defendants within the meaning of all relevant statutes and regulations.

**B.    Plaintiff Johnny Merritt**

27.     J. Merritt is a resident of the State of New York and was employed by Defendants from in or around September 2021 through in or around February 2022.

28.     At all relevant times, J. Merritt was an "employee" of Defendants within the meaning of all relevant statutes and regulations.

**C.    Plaintiff Christopher Baudouin**

29.     Baudouin is a resident of the State of New York and was employed by Defendants from on or around June 9, 2021 through in or around February 2022.

30.     At all relevant times, Baudouin was an "employee" of Defendants within the meaning of all relevant statutes and regulations.

**D.    Plaintiff Christian Alexander Flores Hernandez**

31.     Flores is a resident of the State of New York and was employed by Defendants in or around April 2020.

32.     At all relevant times, Flores was an "employee" of Defendants within the meaning of all relevant statutes and regulations.

**E.    Defendant Ozi 4 Delivery, Inc.**

33.     Ozi 4 Delivery is a domestic business corporation that operates as a delivery company that regularly deliveries groceries and other goods throughout the tri-State area.

34.     At all relevant times, Ozi 4 Delivery controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

35.    At all relevant times, Ozi 4 Delivery established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, and payroll.

36.    At all relevant times, Ozi 4 Delivery maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

37.    At all relevant times, Ozi 4 Delivery was an "employer" within the meaning of all relevant statutes and regulations.

**F.    Defendant Mor 1 Corp.**

38.    Mor 1 is a domestic business corporation that operates several grocery store brands throughout New York City and as a delivery company that regularly deliveries groceries and other goods throughout the tri-State area.

39.    At all relevant times, Mor 1 controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

40.    At all relevant times, Mor 1 established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, and payroll.

41.    At all relevant times, Mor 1 maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

42.    At all relevant times, Mor 1 was an "employer" within the meaning of all relevant statutes and regulations.

**G.**    **Defendant Antillana & Metro Grocery Store Corp.**

43.    Antillana is a domestic business corporation that operates several grocery stores in the tri-State area.

44.    At all relevant times, Antillana controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

45.    At all relevant times, Antillana established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, and payroll.

46.    At all relevant times, Antillana maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

47.    At all relevant times, Antillana was an "employer" within the meaning of all relevant statutes and regulations.

**H.**    **Defendants John Does 1-10**

48.    John Does 1-10 are domestic business corporations that operate grocery store brands throughout the tri-State area.

49.    At all relevant times, John Does 1-10 controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

50.    At all relevant times, John Does 1-10 established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, and payroll.

51.     At all relevant times, John Does 1-10 maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

52.     At all relevant times, John Does 1-10 were "employers" within the meaning of all relevant statutes and regulations.

## I.     **Defendant Osvaldo Rodriguez**

53.     Rodriguez is the owner of the Corporate Defendants and a resident of the State of New York.

54.     At all relevant times, Rodriguez controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

55.     At all relevant times, Rodriguez implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, and payroll.

56.     At all relevant times, Rodriguez maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

57.     At all relevant, Rodriguez was an "employer" within the meaning of all relevant statutes and regulations.

## FACTS

## A.     **Background**

58.     Defendants own and jointly operate several grocery stores in Brooklyn and the Bronx, New York.

59. Defendants' grocery stores include, *inter alia*, Antillana Superfood Marketplace, Goldberg's Freshmarket, Ozzie's Fresh Market, Extra Jumbo Market Place, Empire Kosher Supermarket, Kahan's Superette, and the Market Place.

60. Rodriguez owns and operates each of the above-referenced grocery stores through one or more of the Corporate Defendants.

61. Defendants maintain a staff of hundreds of employees at any given time to work in their grocery stores and make deliveries of items in Defendants' grocery stores and other goods.

62. Defendants employ, *inter alia*, Cashiers, employees to bag and box groceries ("Baggers"), employees to stock shelves in the grocery stores ("Shelve Stockers"), Greeters, Delivery Drivers, and Helpers (who assist the Delivery Drivers).

**B.    Joint Employment and Indicia of Control**

63. As noted above, the Corporate Defendants operate under common ownership and management—namely, by Rodriguez.

64. The Corporate Defendants function as a single integrated enterprise that together operate Defendants' various grocery stores and facilitate the delivery of groceries and other goods throughout the tri-state area of New York, New Jersey, and Connecticut.

65. Defendants supervise and control all aspects of their employees' employment.

66. By way of example only, Defendants set the work schedules for all employees, including the start and end time of each shift, as well as myriad other conditions of employment.

67. Additionally, Defendants maintain employment records for their employees.

68. For example, while Defendants typically pay employees in cash, they occasionally issue wage statements—though the wage statements are still noncompliant with NYLL § 195, as they do not include, *inter alia*, an accurate accounting of the employee's total hours worked.

69. Moreover, Defendants pay some employees through direct deposit and retain forms completed by employees to facilitate the same.

70. At all times, employees are required to work on Defendants' premises.

71. Specifically, all employees other than Delivery Drivers and Helpers work out of one or more of Defendants' grocery stores.

72. Further, Defendants require all Delivery Drivers and Helpers to report to their parking lot at 980 East 13th Street, Brooklyn, New York 11230 at the beginning of each workday so that they can pick up Defendants' vans to complete deliveries.

73. After they arrive at the parking lot, Rodriguez or one of Defendants' managers assigns each Delivery Driver and Helper to a specific grocery store from which they are directed to pick up groceries or other goods and deliver them to customers.

74. Delivery Drivers and Helpers are required to use Defendants' vans to make their deliveries and return those vans to Defendants' parking lot at the end of each shift.

75. As Delivery Drivers, Helpers, and/or in-store grocery store employees (*e.g.*, Cashiers, Baggers, Shelve Stockers, and Greeters), employees perform work that is integral to Defendants' business of operating their grocery stores and making deliveries to customers.

76. Defendants' employees can and often do shifts as a unit between Defendants' various grocery stores.

77. For example, Drivers and Helpers are routinely assigned to make deliveries from various different grocery stores, irrespective of the grocery store for which they were ostensibly hired to work.

78. Throughout their employment, Plaintiffs worked exclusively for Defendants.

79.     Upon information and belief, all other similarly situated employees also worked exclusively or predominantly for Defendants throughout their respective terms of employment.

**C.    Wage Violations**

80.     Defendants engage in a consistent pattern and practice of committing various wage violations against their employees.

81.     Further, Defendants commit additional wage violations against their Delivery Drivers and Helpers, similarly as part of a consistent pattern and practice.

**i.    Payment of a Flat Rate, Resulting in Denial of Minimum Wages, Overtime, and Spread of Hours Pay**

82.     Rather than paying them by the hour, Defendants pay employees a flat rate per day or week worked.

83.     In-store employees (*e.g.*, Cashiers, Baggers, Shelve Stockers, and Greeters) are paid a weekly flat rate of approximately $300, even though they typically work approximately 72 hours per week.

84.     Even without accounting for unpaid overtime (as detailed *infra*) this equates to an effective hourly rate of $4.17 per hour[1]—well below both the State and federal minimum wage rates.

85.     Drivers are paid a daily flat rate of approximately $145, though they typically work six days per week for a total of approximately 66 hours.

86.     Even without accounting for unpaid overtime, this equates to an effective hourly rate of $13.18 per hour[2]—well below the applicable State minimum wage rate.

87.     Helpers also typically work six days per week for a total of approximately 66 hours.

---

[1] $300 / 72 hours = $4.17.
[2] $145 * 6 days = $870 / 66 hours = $13.18.

88.     However, Defendants do not pay Helpers any wages until they have demonstrated a certain degree of loyalty to Defendants, such as by working for Defendants for an extended period of time.

89.     Instead, around the time Helpers are hired, Defendants instruct Delivery Drivers to split their wages with their assigned Helpers however the Delivery Drivers see fit.

90.     After they deem Helpers worthy of receiving wages, Defendants pay them a daily flat rate of approximately $100.

91.     Even without accounting for unpaid overtime, this equates to an effective hourly rate of $9.09 per hour[3]—well below the applicable State minimum wage rate.

92.     Further, Defendants have denied and continue to deny Plaintiffs and all other similarly situated employees overtime compensation for hours worked in excess of 40 hours in a workweek, instead paying them the same daily or weekly flat rate, without accounting for overtime compensation at all.

93.     Additionally, Plaintiffs and all other similarly situated employees have regularly worked shifts of 10 or more hours.

94.     However, Defendants have consistently failed to pay Plaintiffs and all other similarly situated employees an additional hour of "spread of hours" pay at the applicable State minimum wage rate for each such shift.

**ii.     Late Payment of Wages**

95.     Moreover, Defendants have engaged in a consistent pattern and practice of failing to pay Plaintiffs and all other similarly situated employees all of their wages on or before their regularly scheduled paydays.

---

[3] $100 * 6 days = $600 / 66 hours = $9.09.

96.    Indeed, Defendants have established a weekly pay period spanning from Wednesday to Tuesday for Drivers and Helpers.

97.    Defendants have also established the Wednesday following each pay period as the regularly scheduled pay day for all Drivers and Helpers, including J. Merritt, C. Merritt, and Baudouin.

98.    Defendants have established a weekly pay period spanning from Friday to Thursday for in-store grocery store employees (*e.g.*, Cashiers, Baggers, Shelve Stockers, and Greeters), including Flores.

99.    Defendants have established the Friday following each pay period as the regularly scheduled pay day for all in-store grocery store employees (*e.g.*, Cashiers, Baggers, Shelve Stockers, and Greeters), including Flores.

100.    Nevertheless, Defendants have routinely failed to pay Plaintiffs and all other similarly situated employees' wages they earned in the preceding pay period on or before their regularly scheduled pay day—instead delaying payment for weeks or even months, and in some cases failing to tender payment at all.

101.    As a result of Defendants' late payment of wages, employees have suffered concrete harm.

102.    Specifically, employees have been, *inter alia*: (i) deprived of money to which they had a right, thereby costing them the time value of their money; (ii) deprived of the opportunity to invest their money; and/or (iii) unable to use their wages to pay bills and satisfy other financial obligations.

### iii.    Violations of NYLL § 195

103.    The NYLL requires, in relevant part, that Defendants provide employees, "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.

104.    Throughout the statutory period, Defendants never provided Plaintiffs or any other similarly situated employees with Notices of Pay Rate.

105.    The NYLL also requires, in relevant part, that Defendants furnish employees with accurate wage statements with each payment of wages.

106.    Defendants have failed to furnish Plaintiffs and any other similarly situated employees with accurate wage statements during the statutory period.

107.    On the contrary, Defendants have typically paid Plaintiffs and other similarly situated employees in cash, without providing any wage statements at all.

108.    On the rare occasions where Defendants did pay Plaintiffs and other similarly situated employees via check, they did so without including, *inter alia*, an accurate accounting of the employee's total hours worked.

109.    As a result of Defendants' failure to provide employees with Notices of Pay Rate and accurate wage statements with each payment of wages, Plaintiffs and all others similarly situated have suffered concrete harm.

110.    Specifically, employees have been prevented from, *inter alia*: (i) realizing their true hours worked; (ii) realizing that they were underpaid; and (iii) taking appropriate action to obtain the payments due to them.

### iv.    Unlawful Retention of Gratuities and Failure to Reimburse Employees for Work-Related Expenses

111.    Finally, Defendants' customers often tip Delivery Drivers and Helpers via electronic payment through Defendants' websites. *See, e.g.*, Exhibit A (screenshot of tipping feature from The Market Place's website).

112.    However, Defendants do not pay Delivery Drivers and Helpers any of the gratuities they earn.

113.    Upon information and belief, Defendants themselves retain the gratuities intended for Delivery Drivers and Helpers like J. Merritt, C. Merritt, and Baudouin.

114.    Further, Defendants require Drivers and Helpers to cover certain work-related expenses out-of-pocket, including, *inter alia*, the cost of gas and maintenances for Defendants' delivery vans.

115.    While Defendants have on occasion promised to reimburse Drivers and Helpers for these expenses, they have consistently failed to do so, instead forcing Drivers and Helpers to bear the burden of these expenses—which, in turn, drives their effective hourly rate even further below the applicable State minimum wage rate.

D.     **Plaintiffs Crystal Merritt, Johnny Merritt, and Chris Baudouin**

    i.     **Wage Violations**

116.     On or around June 9, 2019, Defendants hired Baudouin as a Shelve Stocker at Defendants' Empire Kosher Supermarket located at 529 Empire Boulevard, Brooklyn, New York 11225.

117.     In or around September 2021, Defendants hired J. Merritt as a Delivery Driver.

118.     In or around September 2021, Defendants transferred Baudouin from his position as a Shelve Stocker at Empire Kosher Supermarket to become a Helper to assist J. Merritt with deliveries.

119.     On a telephone call at or around the time Defendants hired J. Merritt and transferred Baudouin, Rodriguez explained to Baudouin Defendants' policies and practices concerning payment of wages.

120.     Specifically, Rodriguez stated that Defendants pay Delivery Drivers a flat rate of $145 per day and pay Helpers a flat rate of $100 per day, regardless of how many hours they work.

121.     However, as detailed below, in practice, Defendants actually pay Helpers nothing at all—at least until they prove their loyalty over an unspecified period.  *See infra* ¶¶ 141-43.

122.     Instead, Defendants later directed J. Merritt to pay Baudouin a portion of his wages, paying nothing to Baudouin directly for his work as a Helper.  *See id.*

123.     Rodriguez also explained that J. Merritt and Baudouin were required to report to Defendants' parking lot at the beginning of each workday so that Defendants could provide them with a van to make deliveries and assign them to a specific grocery store where they were to pick up and then deliver groceries and other goods.

124.     On or around December 21, 2022, Defendants hired C. Merritt as a Delivery Driver.

125.    Around the time Defendants hired C. Merritt, Rodriguez similarly explained to her on a telephone call that Defendants would pay her only $145 per day as a flat rate, regardless of the number of hours that she worked.

126.    Rodriguez also instructed C. Merritt to report to Defendants' parking lot at the beginning of each workday so that he could provide her with a van and assign her to a grocery store for the day where she was to pick up and then deliver groceries and other goods.

127.    After C. Merritt was hired, Baudouin assisted both C. Merritt and J. Merritt with their deliveries, which they made to customers of several of Defendants' grocery stores.

128.    J. Merritt, C. Merritt, and Baudouin worked six days per week for approximately 10 to 13 hours per day making deliveries to customers from Defendants' various grocery store locations, including, *inter alia*, Goldberg's Freshmarket, Empire Kosher Supermarket, Kahan's Superette, and the Market Place.

129.    Throughout their employment, J. Merritt, C. Merritt, and Baudouin worked Wednesdays and Thursdays from approximately 8:00 a.m. until approximately 9:00 p.m. and Fridays, Sundays, Mondays, and Tuesdays from approximately 8:00 a.m. until approximately 6:00 p.m.

130.    On average, J. Merritt, C. Merritt, and Baudouin typically worked approximately 66 hours per week.

131.    J. Merritt, C. Merritt, and Baudouin also frequently paid out-of-pocket for certain work-related expenses, including covering the cost of gas for Defendants' vans so that they could complete their deliveries.

132.    Rodriguez told J. Merritt, C. Merritt, and Baudouin that Defendants would reimburse gas and other work-related expenses.

133.    Specifically, Rodriguez explained Defendants require employees to provide receipts, invoices, or other documentation reflecting the amount paid for any work-related expenses as part of Defendants' expense policy.

134.    On several occasions, Rodriguez's secretary also explained Defendants' reimbursement policy to J. Merritt, C. Merritt, and Baudouin.

135.    However, Defendants never reimbursed Baudouin, C. Merritt, or J. Merritt for any work-related expenses even though they routinely provided Rodriguez and his secretary with receipts, invoices, and other documentation related to expenses they incurred in connection with their work. *See* Exhibit B (invoice for maintenance of Defendants' van paid by J. Merritt and submitted for reimbursement, but never reimbursed).

136.    Throughout their employment, numerous customers paid tips to J. Merritt, C. Merritt, and Baudouin via Defendants' website.

137.    However, Defendants never furnished those gratuities to Baudouin, C. Merritt, or J. Merritt.

138.    Defendants established a weekly pay period running from Wednesday to Tuesday and designated the subsequent Wednesday as Baudouin's, C. Merritt's, and J. Merritt's regularly scheduled pay day.

139.    However, Defendants often failed to pay J. Merritt, C. Merritt, Baudouin on their regularly scheduled payday.

140.    Indeed, Defendants often paid J. Merritt, C. Merritt, and Baudouin weeks or months after their regularly scheduled payday and sometimes not at all.

141.    For example, Defendants failed to pay Baudouin any wages for his work as a Helper.

142.    Indeed, in September 2021, after his first week working as a Helper, Baudouin confronted Rodriguez about Defendants' failure to pay him his earned wages.

143.    Despite previously telling Baudouin that Defendants pay Helpers a daily flat rate of $100, Rodriguez told Baudouin that Defendants would not pay him and that he should split wages paid to J. Merritt.

144.    Also, as noted above, J. Merritt, C. Merritt, and Baudouin typically worked six days per week.

145.    However, Defendants routinely shorted J. Merritt's and C. Merritt's weekly wages by an entire day's pay, meaning that J. Merritt and C. Merritt were only paid wages for five of the six days they typically worked each week.

146.    As a result of Defendants' failure to pay them on time, J. Merritt, C. Merritt, and Baudouin were, *inter alia*: (i) deprived of money to which they had a right, thereby costing them the time value of their money; (ii) deprived of the opportunity to invest their money; and/or (iii) unable to use their wages to pay bills and satisfy other financial obligations.

147.    For example, as a result of Defendants' failure to pay them on time, J. Merritt, C. Merritt, and Baudouin often could not afford to pay their cell phone bills or afford groceries.

148.    Given that J. Merritt, C. Merritt, and Baudouin worked approximately 66 hours per week, their effective hourly rate during their employment with Defendants at all times fell below the applicable State minimum wage rate.

149.    J. Merritt, C. Merritt, and Baudouin also worked 10 or more hours during most if not all of their workdays.

150.    Nevertheless, Defendants never paid Baudouin, C. Merritt, or J. Merritt an additional hour of Spread of Hours pay at the applicable State minimum wage rate for each such workday.

151.    Further, Defendants never paid Baudouin, C. Merritt, or J. Merritt overtime compensation for any hours worked in excess of 40 hours in a workweek.

152.    For example, from October 17, 2021 to October 23, 2021, C. Merritt and J. Merritt each worked approximately 44 hours.

153.    As such, C. Merritt and J. Merritt should have earned at least $600[4] in straight-time pay and $90[5] in overtime pay over this one-week period.

154.    Moreover, because each of C. Merritt's and J. Merritt's four shifts during this one-week period lasted 10 or more hours, Defendants should have paid them an additional $90[6] in Spread of Hours pay.

155.    However, Defendants paid C. Merritt and J. Merritt only $510 each.

156.    During the same pay period, Baudouin worked approximately 44 hours.

157.    As such, he should have earned at least $600[7] in straight-time pay and $90[8] in overtime pay over this one-week period.

158.    Moreover, because each of Baudouin's six shifts during this one-week period lasted 10 or more hours, Defendants should have paid him an additional $90[9] in Spread of Hours pay.

159.    However, as stated above, Defendants did not pay Baudouin any wages for the work he performed as a Helper.

---

[4] 40 hours x $15 per hour.
[5] 4 hours x $22.50 per hour.
[6] 6 hours x $15 per hour.
[7] 40 hours x $15 per hour.
[8] 4 hours x $22.50 per hour.
[9] 6 hours x $15 per hour.

160.    Additionally, Defendants never provided J. Merritt, C. Merritt, and Baudouin with Notices of Pay Rate or accurate wage statements.

161.    As a result of Defendants' failure to furnish them with Notices of Pay Rate and accurate wage statements, J. Merritt, C. Merritt, and Baudouin were prevented from, *inter alia*: (i) realizing their true hours worked; (ii) realizing that they were underpaid; and (iii) taking appropriate action to obtain the payments due to them.

162.    Throughout the relevant time period, J. Merritt, C. Merritt, and Baudouin spoke with numerous other similarly situated employees about their compensation, and each confirmed that Defendants never furnished them with a Notice of Pay Rate or accurate wage statements to them personally or to any other similarly situated employee.

163.    Through conversations with other similarly situated employees, J. Merritt, C. Merritt, and Baudouin have also learned that they were paid in a substantially similar manner to them.

164.    For example, Baudouin has spoken with three employees who were not paid minimum wages, overtime wages, or Spread of Hours pay.

165.    Also, Defendants often failed to pay these employees on or before their regular scheduled payday.

166.    Further, J. Merritt, C. Merritt, and Baudouin regularly paid out-of-pocket for work-related expenses, including, *inter alia*, gas and maintenance for Defendants' vans.

167.    However, Defendants never reimbursed them for these expenses.

**ii.    Retaliation**

168.    During their employment with Defendants, J. Merritt and Baudouin made several complaints to Rodriguez about Defendants' egregious wage violations.

169.     In early September 2021, Baudouin confronted Rodriguez in Defendants' parking lot and complained about Defendants failing to pay him any wages for his work as a Helper.

170.     Rodriguez, despite his earlier representation that Helpers earn a flat rate of $100 per day, responded that he would not pay Baudouin any wages for his work as a Helper and said that he should split the wages Defendants paid to J. Merritt.

171.     On September 15, 2021, J. Merritt and Baudouin called Rodriguez and complained that Defendants were failing to pay them overtime.

172.     Rodriguez responded by stating unequivocally that Defendants do not pay overtime and told J. Merritt and Baudouin that they were free to resign if they did not like the way Defendants paid them.

173.     In or around December 2021, J. Merritt, C. Merritt, Baudouin, and other employees called Rodriguez and again complained that Defendants failed to pay them overtime.

174.     During the same phone call, they also complained about Defendants' failure to reimburse them for work-related expenses, including, *inter alia*, expenses for gas and maintenance on Defendants' vans that they were required to use to complete deliveries.

175.     Rodriguez again responded that Defendants do not pay overtime or reimburse expenses and again told J. Merritt, C. Merritt, Baudouin, and the other employees on the call that they were free to resign if they were not happy with their compensation.

176.     Also, on approximately a weekly basis, J. Merritt, C. Merritt, and Baudouin complained to Rodriguez about Defendants' failure to timely provide J. Merritt and C. Merritt all of their earned wages by the designated payday, including by failing to pay them for each day of work they performed in a given workweek.

177.     In response to their complaints about Defendants shorting J. Merritt's and C. Merritt's weekly wages, Rodriguez sometimes provided J. Merritt and C. Merritt with a personal check in the amount equal to the hours they worked on the workday that was excluded from their weekly pay.

178.     However, Rodriguez made these supplemental wage payments days or weeks after J. Merritt and C. Merritt's regular paydays and he oftentimes failed to make any supplemental wage payment at all.

179.     Over the next couple of months, J. Merritt, C. Merritt, and Baudouin continued to complain to Rodriguez about Defendants' failure to pay them overtime, make timely wage payments, and reimburse them for work-related expenses.

180.     In response, Rodriguez repeatedly dismissed the complaints and reiterated that Defendants would not pay J. Merritt, C. Merritt, Baudouin, or any other employee overtime compensation.

181.     On February 11, 2022—at which point J. Merritt, C. Merritt, and Baudouin had complained about Defendants' failure to pay overtime, make timely wage payments, and reimburse them for work-related expenses several times—Rodriguez summarily terminated their employment in retaliation for their protected activities.

**E.       Plaintiff Christian Alexander Flores Hernandez**

182.     In April 2020, Defendants hired Flores as Greeter at Antillana, a grocery store operated by Defendants, located at 1339 Jerome Avenue, Bronx, New York 10452.

183.     Flores worked six days per week, for approximately 12 hours per day.

184.     Indeed, throughout his employment, Flores worked from Friday through Thursday from approximately 8:00 a.m. until approximately 8:00 p.m.

185.    Flores worked approximately 72 hours per week.

186.    Despite Flores's hard work and dedication to Defendants and his community during a global health crisis, Defendants callously denied Flores any breaks.

187.    Instead, Defendants forced Flores to stand for hours on end at the entrance to the Antillana grocery store without providing him any time to eat lunch or take other breaks.

188.    Defendants established a weekly pay period running from Friday to Thursday and designated the subsequent Friday as Flores's regularly scheduled pay day.

189.    Defendants paid Flores $300 per week regardless of the number of hours that he worked.

190.    Given that he worked approximately 72 hours per week, Flores's effective hourly rate during his employment—approximately $4.17 per hour—at all times fell below the applicable federal and State minimum wage rates.

191.    Flores also worked 10 or more hours during most if not all of his workdays with Defendants.

192.    Nevertheless, Defendants never paid Flores an additional hour of Spread of Hours pay at the applicable State minimum wage rate for each such workday.

193.    Further, Defendants never paid Flores overtime compensation for any hours worked in excess of 40 hours in a workweek.

194.    For example, during one week in April 2020, Flores worked approximately 72 hours.

195.    As such, Flores earned at least $600[10] in regular pay and $720[11] in overtime pay over this one-week period.

---

[10] 40 hours x $15 per hour.
[11] 32 hours x $22.50 per hour.

196.    Moreover, because each of Flores's six shifts during this one-week period lasted 10 or more hours, Defendants should have paid him an additional $90[12] in Spread of Hours pay.

197.    However, Defendants paid Flores only $300.

198.    Additionally, Defendants never provided Flores with a Notice of Pay Rate or accurate wage statements.

199.    As a result of Defendants' egregious wage violations and the inhumane working conditions at the Antillana grocery store, Flores was forced to resign only weeks after Defendants hired him.

## FLSA COLLECTIVE ACTION ALLEGATIONS

200.    Plaintiffs bring their FLSA claims as a collective action on behalf of themselves and all other similarly situated persons who have been employed by Defendants at any time during the full statute of limitations period (the "FLSA Collective").

201.    At all relevant times, Plaintiffs and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, and were subject to Defendants' policy and practice of: (i) failing to pay overtime wages at a rate of one and one-half times their regular rates of pay for all hours worked in excess of 40 hours in a workweek; and (ii) failing and refusing to timely pay all wages owed on or before their regularly scheduled paydays.

202.    Further, Baudouin and Flores bring their FLSA claims as a collective action on behalf of themselves and all other similarly situated persons who have been employed by Defendants as Helpers or in-store employees, including, *inter alia*, Cashiers, Baggers, Shelve

---

[12] 6 hours x $15 per hour.

Stockers, and Greeters at any time during the full statute of limitations period (the "FLSA Subcollective").

203.    At all relevant times, Baudouin, Flores, and the FLSA Subcollective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, and were subject to Defendants' policy and practice of failing to pay them at a rate equal to or greater than the federal minimum wage (in addition to failing to pay overtime and promptly pay earned wages).

204.    At all relevant times, Defendants have been fully aware of the duties performed by Plaintiffs, the FLSA Collective, and the FLSA Subcollective, and that Plaintiffs, the FLSA Collective, and the FLSA Subcollective, are not exempt from the protections of the FLSA.

205.    Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiffs, the FLSA Collective, and the FLSA Subcollective.

206.    As a result of their unlawful conduct, Defendants are liable to Plaintiffs, the FLSA Collective, and the FLSA Subcollective for the full amount of their unpaid and late wages, with interest, an additional equal amount as liquidated damages, and reasonable attorneys' fees and costs incurred by Plaintiffs, the FLSA Collective, and the FLSA Subcollective.

207.    While the exact number is unknown to Plaintiffs at this time, upon information and belief, there are approximately 1,000 members of the FLSA Collective.

208.    While the exact number is unknown to Plaintiffs at this time, upon information and belief, there are approximately 1,000 members of the FLSA Subcollective.

209.    Plaintiffs are currently unaware of the identities of the individual members of the FLSA Collective and FLSA Subcollective.

210.    Accordingly, the Court should require Defendants to provide Plaintiffs with a list of all members of the proposed FLSA Collective and FLSA Subcollective, along with their last known home addresses, telephone numbers, and email addresses, so that Plaintiffs may provide the members of the FLSA Collective with notice of this action and an opportunity to make an informed decision regarding whether to participate in the same.

### CLASS ACTION ALLEGATIONS

211.    Plaintiffs bring this action, in part, as a class action under the NYLL, as well as all applicable regulations thereunder.

**A.    Class Definitions**

212.    Plaintiffs seek to maintain claims, pursuant to FRCP 23, on behalf of themselves and all other similarly situated persons who have been employed by Defendants at any time during the full statute of limitations period (the "Class").

213.    Plaintiffs allege, on behalf of themselves and the Class, that Defendants violated the NYLL by, *inter alia*: (i) failing to pay hourly wages at or above the applicable State minimum wage rate; (ii) failing to pay overtime wages at a rate of one and one-half times their regular rates of pay for all hours worked in excess of 40 hours in a workweek; (iii) failing to tender Spread of Hours pay; (iv) failing and refusing to timely pay all wages owed on or before their regularly scheduled paydays; (v) failing to furnish Notices of Pay Rate; and (vi) failing to furnish accurate wage statements.

214.    Additionally, J. Merritt, C. Merritt, and Baudouin seek to maintain claims, pursuant to FRCP 23, on behalf of themselves and all other similarly situated persons who have been employed by Defendants as Drivers or Helpers at any time during the full statute of limitations period (the "Subclass").

215.    J. Merritt, C. Merritt, and Baudouin allege, on behalf of themselves and the Subclass, that Defendants violated the NYLL by, *inter alia*: (i) failing to tender payment of gratuities intended for them; and (ii) failing to reimburse them for work-related expenses.

216.    Plaintiffs, the Class, and the Subclass have standing to seek such relief because of the adverse effects that Defendants' wage practices have had on them individually and as a group.

217.    The wage practices described herein are part of Defendants' normal course of conduct.

218.    Pursuant to FRCP 23, Plaintiffs' NYLL claims may be pursued by all similarly situated persons who do not opt out of the Class or Subclass.

**B.    Numerosity and Impracticability of Joinder**

219.    The members of the Class and Subclass are so numerous that joinder is impracticable.

220.    While the exact number is unknown to Plaintiffs at this time, upon information and belief, there are approximately 2,000 members of the Class.

221.    While the exact number is unknown to Plaintiffs at this time, upon information and belief, there are approximately 2,000 members of the Subclass.

222.    Therefore, the numerosity requirement of FRCP 23(a) is satisfied.

**C.    Common Questions of Law and Fact**

223.    Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the Class and Subclass, and predominate over any questions only affecting the members of the Class and/or Subclass individually.

224.    Indeed, there are few, if any, purely individual issues in this action.

225.    The questions of law and fact common to Plaintiffs and the Class include, without limitation:

    (a)    Whether Defendants failed to pay Plaintiffs and the Class at or above the applicable State minimum wage rate;

    (b)    Whether Defendants failed to pay Plaintiffs and the Class all overtime wages owed;

    (c)    Whether Defendants failed to timely pay Plaintiffs and the Class their earned wages;

    (d)    Whether Defendants failed to pay Plaintiffs and the Class an additional hour of Spread of Hours pay for each workday of 10 or more hours;

    (e)    Whether Defendants failed to provide Plaintiffs and the Class with Notices of Pay Rate;

    (f)    Whether Defendants failed to furnish accurate wage statements to Plaintiffs and the Class; and

    (g)    Whether Plaintiffs and the Class are entitled to liquidated damages and injunctive relief.

226.    The questions of law and fact common to J. Merritt, C. Merritt, Baudouin, and the Subclass include, without limitation:

    (a)    Whether Defendants unlawfully withheld gratuities earned by J. Merritt, C. Merritt, Baudouin, and the Subclass;

    (b)    Whether Defendants unlawfully failed to reimburse J. Merritt, C. Merritt, Baudouin, and the Subclass for work-related expenses; and

    (c)    Whether J. Merritt, C. Merritt, Baudouin, and the Subclass are entitled to liquidated damages and injunctive relief.

227.    Therefore, the commonality requirement of FRCP 23(a) is satisfied.

**D.    Typicality of Claims and Relief Sought**

228.    Plaintiffs' claims are typical of the claims of the members of the Class and Subclass they seek to represent.

229.    Plaintiffs, the Class, and the Subclass work, or have worked, for Defendants and are, or were, subject to the same compensation policies and practices.

230.    The wage practices suffered by Plaintiffs, and the damages resulting therefrom, are typical of Defendants' treatment of the Class and Subclass.

231.    Therefore, the typicality requirement of FRCP 23(a) is satisfied.

**E.    Adequacy of Representation**

232.    Plaintiffs will fairly and adequately protect the interests of the Class and Subclass because their interests are coextensive and aligned with those of the Class and Subclass.

233.    Plaintiffs have no interests adverse to the Class and Subclass they seek to represent.

234.    Plaintiffs are willing and able to represent the Class and Subclass as fairly and vigorously as they pursue their similar individual claims.

235.    Plaintiffs have retained competent counsel who are qualified and experienced in employment class action litigation and able to meet the demands necessary to litigate a class action of this size and complexity.

236.    The combined interests, experience, and resources of Plaintiffs and their counsel to competently litigate the individual, Class, and Subclass claims at issue in the instant action satisfy the adequacy of representation requirement of FRCP 23(a).

**F.    Requirements of FRCP 23(b)(1)**

237.    Without certification of the Class and Subclass, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

238.    Accordingly, certification of the Class and Subclass is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs and the Class.

239.    By filing this Complaint, Plaintiffs preserve the rights of the members of the Class and Subclass with respect to the statute of limitations on their claims.

240.    Therefore, not certifying the Class and Subclass would substantially impair and/or impede the ability of the members thereof to protect their interests.

## G.    **Requirements of FRCP 23(b)(2)**

241.    Defendants have acted on grounds, described herein, generally applicable to Plaintiffs and the Class by, *inter alia*,  denying Plaintiffs and the Class overtime wages, failing to pay wages on time, failing to provide Spread of Hours pay, failing to furnish Notices of Pay Rate, and failing to furnish accurate wage statements.

242.    Defendants have acted on grounds, described herein, generally applicable to Baudouin, Flores, and the Subclass by, *inter alia*, denying Baudouin, Flores, and the Subclass minimum wages and failing to tender payment of gratuities earned by Baudouin, Flores, and the Subclass.

243.    These acts are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiffs, the Class, and the Subclass as a whole.

244.    Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the entitlement to, and denial of, the wages detailed herein, timely payment of the same, and the notices detailed herein.

245.    Declaratory and injunctive relief are the factual and legal predicates for Plaintiffs', the Class's, and the Subclass's entitlement to monetary and non-monetary remedies for such wage violations.

246.    Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

**H.    Requirements of FRCP 23(b)(3)**

247.    The common issues of fact and law affecting Plaintiffs', the Class's, and the Subclass's claims—including, without limitation, the common issues identified above—predominate over issues affecting only individual claims.

248.    A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs', the Class's, and the Subclass's claims.

249.    The cost of proving Defendants' pattern and practice of denying wages, timely payment of the same, and required notices makes it impractical for the members of the Class and Subclass to pursue their claims individually.

250.    This class action will not be difficult to manage for reasons including, without limitation, the discrete organizational nature of the members of the Class and Subclass (*i.e.*, they must have worked for Defendants during the statutory period), as well as the common questions of law and fact described herein.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: FAILURE TO PAY OVERTIME**
*(On Behalf of Plaintiffs and the FLSA Collective)*

251.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

252.    During the full statutory period, Plaintiffs and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C. §§ 201, *et seq.*, and applicable regulations thereunder.

253.    The FLSA requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

254.    Plaintiffs and the FLSA Collective were not exempt from the requirement that their employer pay them overtime wages under the FLSA, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

255.    During the statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the FLSA Collective at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

256.    As a result of Defendants' failures to compensate Plaintiffs and the FLSA Collective at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated the FLSA and/or applicable regulations thereunder.

257.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA.

258.    Defendants' violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE FLSA: LATE PAYMENT OF WAGES
### *(On Behalf of Plaintiffs and the FLSA Collective)*

259.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

260.    During the full statutory period, Plaintiffs and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C. §§ 201, *et seq.*, and all applicable regulations thereunder.

261.    The FLSA requires covered employers, including Defendants, to pay employees all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

262.    Plaintiffs and the FLSA Collective were not exempt from the requirement that Defendants timely pay them their wages.

263.    During the statute of limitations period, Defendants have engaged in a policy and practice of failing to pay Plaintiffs and the FLSA Collective all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

264.    As a result of Defendants' failure to pay Plaintiffs and the FLSA Collective all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends, Defendants have violated the FLSA and/or applicable regulations thereunder.

265.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA.

266.    Defendants' violations of the FLSA have significantly harmed Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: FAILURE TO PAY MINIMUM WAGE**
*(On Behalf of Baudouin, Flores, and the FLSA Subcollective)*

267.    Baudouin and Flores, on behalf of themselves and the FLSA Subcollective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

268.    During the full statutory period, Baudouin, Flores, and the FLSA Subcollective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

269.    The FLSA requires covered employers, including Defendants, to compensate employees at a rate not less than the federal minimum wage for all hours worked in a workweek.

270.    Baudouin, Flores, and the FLSA Subcollective were not exempt from the requirement that their employer pay them minimum wages under the FLSA.

271.    During the statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Baudouin, Flores, and the FLSA Subcollective at a rate not less than the federal minimum wage for all hours worked in a workweek.

272.    As a result of Defendants' failures to compensate Baudouin, Flores, and the FLSA Subcollective at a rate not less than the federal minimum wage for all hours worked in a workweek, Defendants have violated the FLSA and/or applicable regulations thereunder.

273.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Baudouin, Flores, and the FLSA Subcollective in accordance with the FLSA.

274.    Defendants' violations of the FLSA have significantly damaged Baudouin, Flores, and the FLSA Subcollective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY OVERTIME**
*(On Behalf of Plaintiffs and the Class)*

275. Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

276. During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

277. The NYLL requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

278. Plaintiffs and the Class were not exempt from the requirement that Defendants pay them overtime under the NYLL, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

279. During the statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

280. As a result of Defendants' failure to compensate Plaintiffs and the Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

281. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the NYLL.

282.    Defendants' violation of the NYLL has significantly damaged Plaintiffs and the Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: FAILURE TO PAY MINIMUM WAGE
*(On Behalf of Plaintiffs and the Class)*

283.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

284.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder.

285.    The NYLL requires covered employers, including Defendants, to compensate employees at a rate not less than the applicable State minimum wage for all hours worked under 40 hours in a workweek.

286.    Plaintiffs and the Class were not exempt from the requirement that Defendants pay them minimum wages under the NYLL, and they are entitled to be paid minimum wages by Defendants for all hours worked under 40 hours in a workweek during the full statute of limitations period.

287.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the Class at a rate not less than the applicable State minimum wage for all hours worked under 40 hours in a workweek.

288.    As a result of Defendants' failure to compensate Plaintiffs and the Class at a rate not less than the applicable State minimum wage for all hours worked under 40 hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

289.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the NYLL.

290.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: SPREAD OF HOURS**
*(On Behalf of Plaintiffs and the Class)*

291.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

292.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

293.    The NYLL requires covered employers, including Defendants, to pay employees who are compensated at or below the applicable State minimum wage rate one additional hour of pay at the basic minimum wage rate on each day during which the length of the interval between the beginning and end of the employee's workday, or "spread of hours," exceeds ten hours.

294.    Plaintiffs and the Class were not exempt from the requirement that Defendants provide them with Spread of Hours pay.

295.    During the statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide Spread of Hours pay to Plaintiffs and the Class.

296.    As a result of Defendants' failure to furnish Spread of Hours pay to Plaintiffs and the Class, Defendants have violated the NYLL and/or applicable regulations thereunder.

297.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: LATE PAYMENT OF WAGES**
*(On Behalf of Plaintiffs and the Class)*

298.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

299.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

300.    The NYLL requires covered employers, including Defendants, to pay Plaintiffs and the Class all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

301.    Plaintiffs and the Class were not exempt from the requirement that Defendants timely pay them their wages.

302.    Throughout the statute of limitations period, Defendants have engaged in a policy and practice of failing to pay Plaintiffs and the Class all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

303.    As a result of Defendants' failure to pay Plaintiffs and the Class all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends, Defendants have violated the NYLL and/or applicable regulations thereunder.

304.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the NYLL.

305.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**EIGHTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: NOTICE OF PAY RATE**
*(On Behalf of Plaintiffs and the Class)*

306.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

307.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

308.    The NYLL requires covered employers, including Defendants, to provide employees, "at the time of hiring, a notice containing the following information:  the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  the telephone number of the employer; plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.  NYLL § 195.

309.    Plaintiffs and the Class were not exempt from the requirement that Defendants provide them with Notices of Pay Rate.

310.    During the statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide Notices of Pay Rate to Plaintiffs and the Class.

311.   As a result of Defendants' failure to provide Notices of Pay Rate to Plaintiffs and the Class, Defendants have violated the NYLL and/or applicable regulations thereunder, including, *inter alia*, NYLL § 195.

312.   Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper notices to Plaintiffs and the Class in accordance with the NYLL.

313.   Defendants' violations of the NYLL entitle Plaintiffs and each member of the Class to recover $50 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

### NINTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: WAGE STATEMENTS
*(On Behalf of Plaintiffs and the Class)*

314.   Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

315.   During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

316.   The NYLL requires covered employers, including Defendants, to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages;  name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."  NYLL § 195.

317.   Plaintiffs and the Class were not exempt from the requirement that Defendants furnish them proper wage statements.

318.    During the statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide accurate wage statements to Plaintiffs and the Class.

319.    As a result of Defendants' failure to furnish accurate wage statements to Plaintiffs and the Class, Defendants violated the NYLL and/or applicable regulations thereunder, including, *inter alia*, NYLL § 195.

320.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper wage statements to Plaintiffs and the Class in accordance with the NYLL.

321.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the Class and entitle them to recover $250 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

### TENTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: FAILURE TO PAY GRATUITIES
#### (*On Behalf of J. Merritt, C. Merritt, Baudouin, and the Subclass*)

322.    J. Merritt, C. Merritt, and Baudouin, on behalf of themselves and the Subclass, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

323.    During the full statutory period, J. Merritt, C. Merritt, Baudouin, and the Subclass were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

324.    The NYLL prohibits covered employers, including Defendants, from accepting, directly or indirectly, any part of the gratuities paid to an employee or any part of a gratuity or charge purported to be a gratuity for an employee.  *See* N.Y. Lab. Law § 196-D.

325.    J. Merritt, C. Merritt, Baudouin, and the Subclass were not exempt from the requirement that Defendants pay them and not retain their gratuities.

326.    Throughout the statute of limitations period, Defendants have engaged in a policy and practice of retaining gratuities intended for J. Merritt, C. Merritt, Baudouin, and the Subclass.

327.    As a result of Defendants' unlawful retention of gratuities intended for J. Merritt, C. Merritt, Baudouin, and the Subclass, Defendants have violated the NYLL and/or applicable regulations thereunder.

328.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate J. Merritt, C. Merritt, Baudouin, and the Subclass in accordance with the NYLL.

329.    Defendants' violations of the NYLL have significantly damaged J. Merritt, C. Merritt, Baudouin, and the Subclass and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### ELEVENTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: FAILURE TO REIMBURSE FOR EXPENSES
#### (*On Behalf of J. Merritt, C. Merritt, Baudouin, and the Subclass*)

330.    J. Merritt, C. Merritt, and Baudouin, on behalf of themselves and the Subclass, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

331.    During the full statutory period, J. Merritt, C. Merritt, Baudouin, and the Subclass were protected by the provisions of the NYLL and applicable regulations thereunder, including, *inter alia*, 12 N.Y.C.R.R. § 146-2.7(c).

332.    The NYLL and applicable regulations thereunder protect employees from incurring expenses in the ordinary course of their employment that result in the employee's rate of pay falling below the applicable State minimum wage rate.

333.    Throughout the full statute of limitations period, Defendants required J. Merritt, C. Merritt, Baudouin, and the Subclass to drive Defendants' vehicles in the course of their employment and in the performance of their work.

334.    J. Merritt, C. Merritt, Baudouin, and the Subclass incurred expenses associated with gas, mileage, tolls, and vehicle maintenance in the use of Defendants' vehicles in the course of their employment, as required by Defendants, which brought J. Merritt's, C. Merritt's, Baudouin's, and the Subclass' wages even further below the applicable State minimum wage rate.

335.    Defendants failed to reimburse J. Merritt, C. Merritt, Baudouin, and the Subclass for these expenses.

336.    As a result of Defendants' failure to reimburse J. Merritt, C. Merritt, Baudouin, and the Subclass for all business expenses that Defendants required J. Merritt, C. Merritt, Baudouin, and the Subclass to incur, Defendants have violated, *inter alia*, 12 N.Y.C.R.R. § 146-2.7(c).

337.    Defendants' violations of the NYLL and applicable regulations thereunder have significantly damaged J. Merritt, C. Merritt, Baudouin, and the Subclass and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, the total amount of their unreimbursed business expenses, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### TWELFTH CAUSE OF ACTION
### VIOLATIONS OF THE FLSA: RETALIATION
***(On Behalf of J. Merritt, C. Merritt, and Baudouin Individually against Defendants)***

338.    J. Merritt, C. Merritt, and Baudouin hereby repeat and reallege the foregoing allegations as if set forth fully herein.

339.    During the full statutory period, J. Merritt, C. Merritt, and Baudouin were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

340.    As set forth above, J. Merritt, C. Merritt, and Baudouin complained to Defendants regarding their violations of the FLSA, including, *inter alia*, failing to pay overtime, timely pay wages, and reimburse them for work-related expenses.

341.    Defendants retaliated against J. Merritt, C. Merritt, and Baudouin for their protected activities by, *inter alia*, terminating their employment.

342.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, J. Merritt, C. Merritt, and Baudouin have suffered, and continue to suffer, monetary and/or economic harm for which they are entitled to an award of damages.

343.    J. Merritt, C. Merritt, and Baudouin are further entitled to an award of liquidated damages, prejudgment interest, and attorneys' fees and costs.

## THIRTEENTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: RETALIATION
### (On Behalf of J. Merritt, C. Merritt, and Baudouin Individually against Defendants)

344.    J. Merritt, C. Merritt, and Baudouin hereby repeat and reallege the foregoing allegations as if set forth fully herein.

345.    During the full statutory period, J. Merritt, C. Merritt, and Baudouin were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

346.    As set forth above, J. Merritt, C. Merritt, and Baudouin complained to Defendants regarding their violations of the NYLL, including, *inter alia*, failing to pay overtime, timely pay wages, and reimburse them for work-related expenses.

347.    Defendants retaliated against J. Merritt, C. Merritt, and Baudouin for their protected activities by, *inter alia*, terminating their employment.

348.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, J. Merritt, C. Merritt, and Baudouin have suffered, and continues to suffer, monetary and/or economic harm for which they are entitled to an award of damages.

349.    J. Merritt, C. Merritt, and Baudouin are further entitled to an award of liquidated damages, prejudgment interest, and attorneys' fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, FLSA Subcollective, Class, and the Subclass, respectfully requests that this Court:

A.    Declare that the practices complained of herein are unlawful under applicable federal and State laws;

B.    Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.    Grant Plaintiffs an award of damages, in an amount to be determined after a trial, to compensate them for all non-monetary and/or compensatory damages they have suffered, including, *inter alia*, compensation for their mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

D.    Grant Plaintiffs an award of damages, in an amount to be determined after a trial, for any and all other monetary and/or non-monetary losses they have suffered;

E.    Grant Plaintiffs an award of prejudgment interest on the damages they are awarded to the greatest extent permitted by law;

F.    Grant Plaintiffs an award of reasonable attorneys' fees to the greatest extent permitted by law;

G.     Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendants to provide Plaintiffs with a list of all members of the FLSA Collective and FLSA Subcollective, including all last known addresses, telephone numbers, and e-mail addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

H.     Equitably toll the statute of limitations for all members of the FLSA Collective and FLSA Subcollective from the date of this filing until they are provided notice of this instant action and opportunity to join the same;

I.     Declare this action to be maintainable as a class action pursuant to FRCP 23, and direct Defendants to provide Plaintiffs with a list of all members of the Class and Subclass, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

J.     Designate Plaintiffs as the representative of the Class and Subclass, and their counsel of record as class counsel;

K.     Determine the damages sustained by Plaintiffs, the FLSA Collective, and the FLSA Subcollective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of Plaintiff, the FLSA Collective, and the FLSA Subcollective, plus such pre-judgment and post-judgment interest as may be allowed by law;

L.     Determine the damages sustained by Plaintiffs, the Class, and the Subclass as a result of Defendants' violations of the NYLL, and award those damages against Defendants and in favor of Plaintiffs, the Class, and the Subclass, plus such pre-judgment and post-judgment interest as may be allowed by law;

M.      Award Plaintiffs, the FLSA Collective, the FLSA Subcollective, the Class, and the Subclass an additional equal amount as liquidated damages because Defendants' violations were without a good faith basis;

N.      Award Plaintiffs, the FLSA Collective, the FLSA Subcollective, the Class, and the Subclass their reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees; and

O.      Grant Plaintiffs, the FLSA Collective, the FLSA Subcollective, the Class, and the Subclass such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves, the FLSA Collective, the FLSA Subcollective, Class, and Subclass hereby demands a trial by jury on all issues of fact and damages.

Dated:  March 22, 2023
      New York, New York

**FARUQI & FARUQI, LLP**

By:  */s/ Alex J. Hartzband*
     Alex J. Hartzband
     Taylor J. Crabill

685 Third Avenue, 26th Floor
New York, New York 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
ahartzband@faruqilaw.com
tcrabill@faruqilaw.com

*Attorneys for Plaintiff, the proposed FLSA Collective, FLSA Subcollective, Class, and Subclass*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

CRYSTAL MERRITT, JOHNNY MERRITT,
CHRISTOPHER BAUDOUIN, and CHRISTIAN
ALEXANDER FLORES HERNANDEZ on behalf
of themselves and others similarly situated,

                             Plaintiffs,

                v.

OZI 4 DELIVERY, INC., MOR 1 CORP.,
ANTILLANA & METRO GROCERY STORE,
CORP., JOHN DOES 1-10, and OSVALDO
RODRIGUEZ, in both his individual and
professional capacities,

                            Defendants.

Civil Action No.:

---

## CONSENT TO SUE

I, _____Crystal Merritt_____, have been employed by Defendants within the last three years.  I

hereby consent to sue Defendants as a named Plaintiff in the above-captioned action, *Merritt, et*

*al. v. Ozi 4 Delivery, Inc., at al.*, pending in the United States Court for the Eastern District of New

York.

      I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Avenue, 26th

Floor, New York, New York 10017, telephone number 212-983-9330, as my attorneys.

Name (Print): _____Crystal Merritt_____

Signature: _____[DocuSigned signature]_____      Date Signed: _____3/21/2023 | 5:59 PM EDT_____

DocuSigned by:

B63E231021F143A...

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

CRYSTAL MERRITT, JOHNNY MERRITT,
CHRISTOPHER BAUDOUIN, and CHRISTIAN
ALEXANDER FLORES HERNANDEZ on behalf
of themselves and others similarly situated,

                              Plaintiffs,

                     v.

OZI 4 DELIVERY, INC., MOR 1 CORP.,
ANTILLANA & METRO GROCERY STORE,
CORP., JOHN DOES 1-10, and OSVALDO
RODRIGUEZ, in both his individual and
professional capacities,

                            Defendants.

Civil Action No.:

---

**CONSENT TO SUE**

I, _____Johnny Merritt_____, have been employed by Defendants within the last three years.  I

hereby consent to sue Defendants as a named Plaintiff in the above-captioned action, *Merritt, et*

*al. v. Ozi 4 Delivery, Inc., at al.*, pending in the United States Court for the Eastern District of New

York.

      I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Avenue, 26th

Floor, New York, New York 10017, telephone number 212-983-9330, as my attorneys.

Name (Print): _____Johnny Merritt_____

Signature: _____

Date Signed: _____3/21/2023 | 2:55 PM PDT_____

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

CRYSTAL MERRITT, JOHNNY MERRITT, CHRISTOPHER BAUDOUIN, and CHRISTIAN ALEXANDER FLORES HERNANDEZ on behalf of themselves and others similarly situated,

                         Plaintiffs,

            v.

OZI 4 DELIVERY, INC., MOR 1 CORP., ANTILLANA & METRO GROCERY STORE, CORP., JOHN DOES 1-10, and OSVALDO RODRIGUEZ, in both his individual and professional capacities,

                         Defendants.

Civil Action No.:

---

## CONSENT TO SUE

I, _Christopher Baudouin_____, have been employed by Defendants within the last three years.  I hereby consent to sue Defendants as a named Plaintiff in the above-captioned action, *Merritt, et al. v. Ozi 4 Delivery, Inc., at al.*, pending in the United States Court for the Eastern District of New York.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Avenue, 26th Floor, New York, New York 10017, telephone number 212-983-9330, as my attorneys.

Name (Print): ___Christopher Baudouin_____

Signature: _____

Date Signed: ___3/21/2023 | 5:56 PM EDT____

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CRYSTAL MERRITT, JOHNNY MERRITT, CHRISTOPHER BAUDOUIN, and CHRISTIAN ALEXANDER FLORES HERNANDEZ on behalf of themselves and others similarly situated,<br><br>                          Plaintiffs,<br><br>v.<br><br>OZI 4 DELIVERY, INC., MOR 1 CORP., ANTILLANA & METRO GROCERY STORE, CORP., JOHN DOES 1-10, and OSVALDO RODRIGUEZ, in both his individual and professional capacities,<br><br>                          Defendants. | Civil Action No.: |

**CONSENT TO SUE**

I, ___Alexander Flores___, have been employed by Defendants within the last three years.  I hereby consent to sue Defendants as a named Plaintiff in the above-captioned action, *Merritt, et al. v. Ozi 4 Delivery, Inc., at al.*, pending in the United States Court for the Eastern District of New York.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Avenue, 26th Floor, New York, New York 10017, telephone number 212-983-9330, as my attorneys.

Name (Print): ___Alexander Flores___

Signature: ___DocuSigned by: [signature] 3ECC104C3BBA4A4...___          Date Signed: ___3/21/2023 | 10:42 PM EDT___