



71-01 Austin Street
Forest Hills, NY 11375
727-335-1030
crabilllawfirm.com

**Taylor J. Crabill**
tcrabill@crabilllawfirm.com

December 3, 2024

**VIA ECF**

The Honorable Vera M. Scanlon
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    <u>Merritt, et al. v. Ozi 4 Delivery, Inc., et al.</u>;
                  <u>Civil Action No. 23-cv-2212-EK-VMS (E.D.N.Y)</u>

Dear Judge Scanlon:

      We represent Plaintiffs Crystal Merritt ("C. Merritt"), Johnny Merritt (J. Merritt"), and Christopher Baudouin ("Baudouin"), (together, "Plaintiffs") (collectively, "Plaintiffs") in the above-referenced matter. Plaintiffs write pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) to respectfully request approval of the parties' settlement of this matter (the "Settlement"), as set forth in the parties' Settlement Agreement and Release, as well as Plaintiffs' counsel's reasonable attorneys' fees and costs. *See* Declaration of Taylor J. Crabill ("Crabill Decl."), Exhibit A (the "Agreement").[1] If approved, the Settlement will fully and finally resolve Plaintiffs' claims in this matter. Plaintiffs file the instant motion with the consent of Defendants Mor 1 Corp. ("Mor 1"), Ozi 4 Delivery, Inc. ("Ozi 4 Delivery"), Ozi Glikso ("Glikso") (together, the "Delivery Defendants"), and Itzik Benabo ("Benabo"), (together, the "Supermarket Defendants") (altogether, "Defendants").

      As detailed below, the Settlement memorialized in the Agreement is fair and reasonable under each of the five so-called "*Wolinsky* factors" (*see Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012)) and complies with each of the admonitions set forth by the Second Circuit in *Cheeks*. *See Cheeks,* 796 F.3d at 206.

**I.**      **PLAINTIFFS' ALLEGATIONS**

      **A.**      **Background**

      The Supermarket Defendants own and operate several grocery stores in Brooklyn, New York. *See* ECF No. 28 ("Amended Complaint") ¶¶ 55-57. To provide delivery services to their customers, the Supermarket Defendants contract with the Delivery Defendants who provide the

---

[1] Unless otherwise noted, all exhibits to the Crabill Decl. are hereinafter cited as "Ex. __."



Supermarket Defendants with Delivery Drivers and Helpers to make deliveries from their stores. *Id.* ¶ 58.

### B. <u>Wage Violations</u>

#### i. <u>Payment of a Flat Rate, Resulting in Denial of Minimum Wages, Overtime, and Spread of Hours Pay</u>

Plaintiffs allege that Defendants pay employees a flat rate per day or week worked. *Id.* ¶ 90. Delivery Drivers are paid a daily flat rate of approximately $145, though they typically work six days per week for a total of approximately 66 hours. *Id.* ¶ 91. Even without accounting for unpaid overtime, this equates to an effective hourly rate of $13.18 per hour. *Id.* ¶ 92. Helpers also typically work six days per week for a total of approximately 66 hours. *Id.* ¶ 93. However, Defendants do not pay Helpers any wages until they have demonstrated a certain degree of loyalty to Defendants. *Id.* ¶ 94. Instead, around the time Helpers are hired, Defendants instruct Delivery Drivers to split their wages with their assigned Helpers. *Id.* ¶ 95. After they deem Helpers worthy, Defendants pay them a daily flat rate of approximately $100. *Id.* ¶ 96. Even without accounting for unpaid overtime, this equates to an effective hourly rate of $9.09 per hour — well below the applicable State minimum wage rate. *Id.* ¶ 97.

Additionally, Defendants have denied Plaintiffs overtime compensation for hours worked in excess of 40 hours in a workweek, instead paying them the same daily or weekly flat rate, without accounting for overtime compensation. *Id.* ¶ 98. Further, Plaintiffs have regularly worked shifts of 10 or more hours. *Id.* ¶ 99. However, Defendants have consistently failed to pay Plaintiffs an additional hour of "spread of hours" pay at the applicable State minimum wage rate for each such shift. *Id.* ¶ 100.

Defendants deny the allegations regarding the employment of helpers and the allegations as to the number of hours that these plaintiffs worked.

#### ii. <u>Late Payment of Wages</u>

Plaintiffs allege Defendants failed to pay Plaintiffs all of their wages on or before their regularly scheduled paydays. *Id.* ¶ 101. Rather, Defendants routinely failed to pay Plaintiffs their earned wages in the preceding pay period on or before their regularly scheduled paydays—instead delaying payment for weeks or even months, or failing to tender payment at all. *Id.* ¶ 102-06.

Defendants deny the allegations and contend all wages owed were appropriately paid.

#### iii. <u>Violations of NYLL § 195</u>

Defendants never provided Plaintiffs with Notices of Pay Rate. *Id.* ¶¶ 107-08. Defendants failed to furnish Plaintiffs with accurate wage statements during the statutory period. *Id.* ¶¶ 109-10. On the contrary, Defendants typically paid Plaintiffs in cash, without providing any wage statements. *Id.* ¶ 111. When Defendants did pay Plaintiffs via check, they did so without including, an accurate accounting of the employee's total hours worked. *Id.* ¶ 112.



        iv.        <u>Unlawful Retention of Gratuities and Earned Commissions and Failure to Reimburse Employees for Work-Related Expenses</u>

Plaintiffs allege Supermarket customers often tip Delivery Drivers and Helpers via electronic payment through Defendants' websites. *Id*. ¶ 115. However, Defendants do not pay Delivery Drivers and Helpers any of the gratuities they earn. *Id*. ¶ 116. Also, Defendants agree to provide Delivery Drivers and Helpers weekly commission payments based on the numbers of boxes they deliver during a given pay period at a rate of $0.25 per box. *Id*. ¶ 117. However, Defendants often do not pay Delivery Drivers and Helpers all of their earned commissions. *Id*. ¶ 118. Defendants themselves retain the gratuities and commissions. *Id*. ¶ 119.

Further, Defendants require Delivery Drivers and Helpers to cover certain work-related expenses out-of-pocket, including, *inter alia*, the cost of gas and maintenances for Defendants' delivery vans. *Id*. ¶ 120. While Defendants have on occasion promised to reimburse Delivery Drivers and Helpers for these expenses, they have consistently failed to do so, instead forcing Delivery Drivers and Helpers to bear the burden of these expenses—which, in turn, drives their effective hourly rate even further below the applicable State minimum wage rate. *Id*. ¶ 121.

Defendants deny the allegations regarding improper retention and payment of gratuities as well as the allegations regarding reimbursement of work-related expenses.

        v.        <u>Retaliation Against Plaintiffs for Engaging in Protected Activities</u>

During their employment, Plaintiffs made several complaints to Glikso about Defendants' egregious wage violations. *Id*. ¶ 178. On February 11, 2022—at which point Plaintiffs had complained several times about Defendants' failure to pay overtime, make timely wage payments, and reimburse them for work-related expenses several times—Defendants terminated their employment in retaliation for their protected activities. *Id*. ¶ 179-91.

Defendants deny the allegations of retaliation.

**II.**    <u>**PROCEDURAL HISTORY**</u>

On March 22, 2021, Plaintiffs initiated this action by filing a Collective and Class Action Complaint alleging that Defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA") and the New York Labor Law ("NYLL") by failing to properly pay them minimum and overtime wages, failing to pay them spread of hours wages, failing to timely pay them earned wages, failing to pay them earned gratuities and commissions, failing to reimburse expenses, and failing to furnish them Notices of Pay Rate and accurate wage statements. *See* ECF No. 1 ¶¶ 1-16, 58-62, 80-167, 251-337; Crabill Decl. ¶¶ 11-12. Plaintiffs also filed claims for retaliation under the FLSA and NYLL. *See* ECF No. 1 ¶¶ 17, 168-181; 338-349; Crabill Decl. ¶ 13. On August 28, 2023, Plaintiffs filed the Amended Complaint asserting nearly identical allegations to those contained in the Complaint. *See* ECF No. 1, Amended Complaint; Crabill Decl. ¶ 15. On September 14, 2023, Defendants filed an Answer to the Amended Complaint, denying all liability




for Plaintiffs' claims, and asserting several affirmative defenses.  *See* ECF No. 33; Crabill Decl. ¶ 16.

In furtherance of the parties' efforts to reach a fair and reasonable settlement of this matter, counsel engaged in a thorough investigation and discovery, including the exchange of payroll documents, earnings statements, time records, schedules, and text messages.  *Id.* ¶ 17.  The parties conferred numerous times as to the strengths, weaknesses, and merits of Plaintiffs' claims and Defendants' defenses, and exchanged case law supporting their respective positions.  *Id*. ¶ 18.  Further, Plaintiffs' counsel interviewed each Plaintiff and analyzed documents pertaining to each of same.  *Id.* ¶ 19.  Plaintiffs' counsel then conducted extensive assessments of various methodologies for calculating damages under different scenarios in this case.  *Id.* ¶ 20.  Based on counsel's detailed interviews, investigations, and analysis of, *inter alia*, payroll and time records, counsel calculated Plaintiffs' wage damages to be $105,280.55 and damages stemming from Plaintiffs' retaliation claims to be $138,264.55, including $93,264.55 for lost wages and $45,000 for emotional distress damages.  *Id.* ¶ 21.

On July 10, 2024, the parties participated in a full day mediation with highly regarded mediator Andrew Kimler, Esq.  *Id.* ¶ 22.  With Mr. Kimler's assistance and following months of negotiations, an exchange of documents, and a full day of productive mediation, the parties were able to resolve Plaintiffs' claims for a sum of $105,000 on the terms set forth in the Agreement.  *Id.* ¶ 23; *see also* Ex. A.

### III.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND CONSISTENT WITH *CHEEKS*

Plaintiffs submit that this Settlement is especially fair and reasonable as it provides for a 43% recovery of all their best-case scenario damages for unpaid wages, including liquidated damages, prejudgment interest, and statutory damages for Notice of Pay Rate and wage statement violations, and damages stemming from Plaintiffs' retaliation claims—even assuming all factual and legal assumptions are made in Plaintiffs' favor.  Crabill Decl. ¶ 24.  Indeed, this assumes that Plaintiffs prevail on each of their claims and Defendants lose on all their defenses.  Crabill Decl. ¶ 25.

To assess the reasonableness of the Settlement, the Court must consider the totality of the circumstances including, but not limited to, examining the five *Wolinsky* factors: (i) Plaintiffs' range of possible recovery; (ii) the extent to which the Settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (iii) the seriousness of the litigation risks faced by the parties; (iv) whether the Settlement is the product of arm's-length negotiations between experienced counsel; and (v) the possibility of fraud or collusion.  *Wolinsky*, 900 F. Supp. 2d at 335-36.  Additionally, courts scrutinize the "admonitions" set forth in *Cheeks*—specifically, that overbroad releases and stringent confidentiality provisions are to be avoided.  *See Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824 (SIL), 2015 WL 655-560, at *1 (E.D.N.Y. Oct. 28, 2015) (summarizing the *Cheeks* admonitions).



A. **Plaintiffs Will Receive a Significant Portion of Their Maximum Possible Recovery Under the Settlement**

The first *Wolinsky* factor supports a finding that the Settlement is fair and reasonable, as it provides Plaintiffs with a substantial portion of the maximum possible recovery that they could obtain if they litigated this matter through summary judgment and/or trial.  Crabill Decl. ¶ 26. Indeed, the Settlement results in Plaintiffs receiving 43% of all possible damages—including economic damages, liquidated damages, prejudgment interest, statutory damages (for the notice and wage statement violations), and damages stemming from Plaintiffs' retaliation claims.  *Id.* ¶ 27.

This recovery reflects a reasonable compromise and exceeds recovery percentages recently approved in other wage-and-hour settlements within this Circuit.  *See Cohetero v. Stone & Tile, Inc.*, No. 16-CV-4420 (KAM)(SMG), 2018 WL 565717, at *7 (E.D.N.Y. Jan. 25, 2018) (approval of settlement for "approximately two-thirds of [ ] claimed, actual unpaid wages, which is not unreasonable in light of the risks of litigation."); *see also Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) ("[A] recovery figure of 22.8% seems within the bounds of reasonableness."); *Wenping Wang v. Masago Neo Asian Inc.*, No. 14-cv-6249(DRH)(ARL), 2016 WL 7177514, at *2 (E.D.N.Y. Sept. 26, 2016) (recommending approval of settlement where settlement provided a 52% recovery of potential damages); *Griffin, et al.  v. Aldi, Inc.*, No. 5:16-cv-354-(LEK/ATB), ECF Nos. 104-1 at 14; 109 (N.D.N.Y. Nov. 15, 2018) (approval of settlement of 28% of maximum damages); *Felix v. Breakroom Burgers & Tacos*, No. 15 Civ. 3531 (PAE), 2016 WL 3791149, at *1-2 (S.D.N.Y. Mar. 8, 2016) (finding a recovery figure of 37.4% to be reasonable "[i]n light of [] litigation risks[.]"); *Rodriguez-Hernandez v. K Bread & Co., Inc.*, No. 15-cv-6848 (KBF), 2017 WL 2266874, at *4 (S.D.N.Y. May 23, 2017) (approving a settlement of 26% of potential damages given "bona fide disputes" between the parties and litigation risks); *Larrea v. FPC Coffees Reality Co.*, No. 15-CIV-1515 (RA), 2017 WL 1857246, at *2 (S.D.N.Y. May 5, 2017) (finding recovery of 43% of anticipated maximum recovery was fair and reasonable).

To ascertain Plaintiffs' best-case scenario for recovery, Plaintiffs' counsel analyzed and evaluated the merits of the various claims at issue.  Crabill Decl. ¶ 28.  Plaintiffs' counsel conducted extensive interviews with Plaintiffs and reviewed documents obtained from both Plaintiffs and Defendants, including payroll documents, earnings statements, time records, schedules, and text messages.  *Id.* ¶ 29.  Based on this analysis and investigation, Plaintiffs' counsel analyzed the strengths and weaknesses of Plaintiffs' claims and the range of possible recoveries. *Id.* ¶ 30.

With respect to Plaintiffs' FLSA and NYLL claims, Plaintiffs allege that Defendants failed to pay them their minimum and overtimes wages, failed to timely pay them their earned wages, failed to pay them spread-of-hours wages, failed to pay all earned commissions, and failed to reimburse them for work-related expenses.  Amended Complaint ¶¶ 89-106, 115-177.  Additionally, Plaintiffs allege that Defendants never provided them with Notices of Pay Rate or accurate wage statements during the statutory period.  *Id.* ¶¶ 107-114.  Lastly, Plaintiffs allege that Defendants retaliated against them by terminating their employment almost immediately after they complained to Defendants about their unlawful wage practices.  *Id.* ¶¶ 178-191.


Defendants contest the validity of Plaintiffs' contentions, their claimed damages, and the assumptions underlying such claims and calculations, and Plaintiffs dispute the defenses and assumptions raised and relied upon by Defendants. Crabill Decl. ¶ 36. Specifically, Defendants dispute the number of hours Plaintiffs worked, whether Plaintiffs were exempt under the FLSA and NYLL, whether Plaintiffs were entitled commissions payments and reimbursement of expenses, whether Plaintiffs are entitled to statutory damages for notice violations, and whether Defendants retaliated against Plaintiffs. *Id*. ¶ 37.

The parties are squarely in dispute regarding these issues and have conferred on numerous occasions regarding the legal and factual issues supporting their respective claims and defenses. *Id*. ¶ 38. The parties engaged in numerous telephonic conferences to discuss the facts and law underlying their positions. *Id*. ¶ 39. The parties agree that these issues involve fact-intensive inquiries regarding Plaintiffs' compensation, hours worked, the nature of their work, and the termination of their employment. *Id*. ¶ 40. Among other things, these inquiries require an assessment of Plaintiffs' work, Plaintiffs' testimony as to the number of hours they worked each day and how much they were paid, and testimony concerning the circumstances surrounding their protected activities and the termination of their employment. *Id*. ¶ 41. The parties further agree that these issues likely require credibility determinations that significantly bear on liability and damages. *Id*. ¶ 42. Given the fact-intensive nature of the issues in dispute, had this matter not resolved, it likely would have proceeded to trial. *Id.* ¶ 43.

Making all assumptions in their favor, Plaintiffs assert that their damages for all unpaid wages, including minimum and overtime wages, spread of hours pay, liquidated damages, prejudgment interest, and statutory damages for notice violations amount to $105,280.55. *Id*. ¶ 44. Further, Plaintiffs assert that their economic and emotional distress damages stemming from their retaliation claims amount to $138,264.55. *Id*. ¶ 45. This Settlement of $105,000 provides Plaintiffs with a 43% recovery of all such best-case scenario damages, including, minimum and overtime wages, liquidated damages, prejudgment interest, and statutory damages for notice violations. *Id*. ¶ 46.

Given the fact-intensive nature of the parties' dispute over the claims, and the risk that Defendants might prevail on least some of their defenses, Plaintiffs' counsel respectfully submits that the Settlement reflects a substantial portion of the maximum possible recovery that they could obtain if Plaintiffs litigated this matter through summary judgment and/or trial.

**B.     By Entering Into the Settlement, the Parties Avoid Significant Burden in Establishing Their Claims and the Attendant Risks of Continued Litigation**

The second and third *Wolinsky* factors are met because both parties will avoid the significant expense of discovery, motion practice, and the risk of a lengthy, fact-specific trial. Courts have recognized that cases where plaintiffs must prove their unpaid wages are both fact-intensive and challenging, as it is difficult to establish the parties' claims and defenses and weighs in favor of approval. *See, e.g., Long v. HSBC USA Inc.*, No. 14 Civ. 6233(HBP), 2015 WL 5444651, at *4 (S.D.N.Y. Sept. 11, 2015) ("[T]he claims and defenses are fact-intensive and

Case 1:23-cv-02212-VMS   Document 62   Filed 12/03/24   Page 7 of 11 PageID #: 679



present risks, including the potential inability to prove the . . . amount of unpaid . . . wages[.]"); *Mills v. Capital One, N.A.*, No. 14 Civ. 1937(HBP), 2015 WL 5730008, at *5 (S.D.N.Y. Sept. 30, 2015) (recognizing unpaid wage claims involve fact-intensive claims and defenses that present risks, including plaintiff's potential inability to prove unpaid wage claims).

Additionally, the burden will be especially great because the parties maintain drastically different assessments concerning the number of hours Plaintiffs worked each day and how much they were paid.  Crabill Decl. ¶ 48.  Put differently, further litigation would result in "additional expense, including costly depositions [], motion practice, trial preparation, trial and appeal, that could meaningfully decrease possible recovery for plaintiffs."  *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 299-300 (E.D.N.Y. 2015); *Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 420–21 (S.D.N.Y. 2014) (finding in an FLSA action, that "the fact-intensive nature of their claims mean that litigation would likely be lengthy, complex, and expensive").

Given the fact-intensive analysis of the issues in dispute, the parties have saved themselves the costs and risks associated therewith, thus satisfying the second and third factors delineated by *Wolinsky*.

C. **The Settlement is the Product of Arm's-Length Bargaining Between Experienced Counsel and There Is No Possibility of Fraud or Collusion**

The fourth and fifth factors—whether the Settlement is the product of an arm's-length bargaining process and the possibility of fraud or collusion—also support a conclusion that the Settlement is fair and reasonable.  "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement."  *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (KBF) (DCF), 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234(LB), 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (approval granted where settlement "was the result of arm's length negotiations, which were undertaken in good faith by counsel") (internal quotation marks omitted).  All parties in this matter are represented by counsel experienced in wage-and-hour and employment disputes.  Crabill Decl. ¶ 49.  Counsel for the parties have worked diligently to advance their clients' positions and negotiate a fair resolution.  Crabill Decl. ¶ 50.

Significantly, on July 10, 2024, the parties participated in a full-day mediation session with the well-respected mediator Andrew Kimler, Esq.  *Id.* ¶ 22.  The case history and litigation process leave no doubt that counsel for the parties negotiated at an arm's-length, rendering the possibility of fraud or collusion non-existent.  *See Hernandez v. Anjost Corp.*, No. 11 Civ. 1531(AT), 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("A settlement like this one, reached with the help of a third-party neutral, enjoys a 'presumption that the settlement achieved meets the requirements of due process.'") (quoting *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011); *Vasquez v. TGD Grp., Inc.*, No. 14-CV-7862 (RA), 2016 WL 3181150, at *3 (S.D.N.Y. June 3, 2016) (same).


Further, the Settlement does not contain provisions admonished in *Cheeks*. Following *Cheeks*, courts have looked unfavorably upon FLSA settlement agreements that contain confidentiality agreements and broad releases. *See Jones v. Smith*, 319 F. Supp. 3d 619, 626 (E.D.N.Y. 2018) (court could not approve FLSA settlement "given its confidentiality provision"); *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 178 (S.D.N.Y. 2015) ("The rationale for rejecting confidential FLSA settlements is particularly strong, since sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair.") (internal quotation marks omitted); *Wolinsky*, 900 F. Supp. 2d at 337-41 (court did not approve FLSA settlement with confidentiality agreement); *Alvarez v. Michael Anthony George Const. Corp.*, No. 11 CV 1012(DRH)(AKT), 2015 WL 3646663, at *2 (E.D.N.Y. June 10, 2015) (court did not approve FLSA settlement as the language of the release was "far too sweeping to be fair and reasonable"); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592(LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014) (court denied approval based on broad release in FLSA settlement agreement).

The Agreement does not contain any terms that would militate against the Court approving it. For example, the Agreement does not contain a non-disparagement clause or a confidentiality provision and allows Plaintiffs to openly and freely discuss their employment experiences, their lawsuit, their claims, and this Settlement with anyone. *See generally* Ex. A; *see also Ezpino v. CDL Underground Specialists, Inc.*, No. 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *2-3 (E.D.N.Y. June 30, 2017) (citing *Cheeks*, 796 F. 3d at 206) (approving settlement agreement that did not contain confidentiality clause).

In sum, this Settlement provides for a significant portion of Plaintiffs' possible recovery, mitigates significant risks and costs of litigation, is the product of arm's-length bargaining between experienced counsel on both sides, does not contain a confidentiality provision or non-disparagement clause, is exceedingly fair and reasonable, and represents a fair compromise of bona fide disputes. As such, the Court should approve the Settlement in its entirety.

### IV. PLAINTIFFS' PROPOSED ATTORNEYS' FEES AND COSTS ARE FAIR AND REASONABLE

Plaintiffs request that the Court approve Plaintiffs' counsel's fees of $34,996.41, which is one-third of the total payment under the Settlement. Crabill Decl. ¶ 51; *see* Ex. B (retainer agreements); *see also Navarrete v. Milano Mkt. Place, Inc.*, No. 18-CV-7858 (OTW), 2019 WL 4303347, at *2 (S.D.N.Y. Sept. 11, 2019) (the attorneys' fee award of "one-third of the settlement sum is reasonable and consistent with fees upheld by courts in this District"). The requested fee amounts to only 39.1% of Plaintiffs' counsel's lodestar of $89,525.50 in this action and, as such, is both fair and reasonable. Crabill Decl. ¶ 52.

The requested fee is consistent with the one-third contingency fees frequently approved as part of FLSA settlements in this Circuit and within the Southern District of New York, specifically. *See, e.g., Flores v. Anjost Corp.*, No. 11 Civ. 1531(AT), 2014 WL 321831, at *8 (S.D.N.Y. Jan. 29, 2014) (finding one-third award "consistent with the norms" of the Second Circuit and collecting cases where one-third was awarded in FLSA cases); *Singh v. MBD Constr. Mgmt., Inc.*, No. 16


Civ. 5216(HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate"); *Gilliam v. Addicts Rehab. Ctr. Fund*, 05 Civ. 3452(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (same); *Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14-cv-4382 (LGS), 2015 WL 4210906 (S.D.N.Y. July 9, 2015) (awarding one-third to plaintiffs' counsel).

The reasonableness of the requested fee is further confirmed by applying the lodestar method as a "cross check." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007); *Flores*, 2014 WL 321831, at *9; *In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145(KMW), 2014 WL 185628 at *10 (S.D.N.Y. Jan. 14, 2014); *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751 (RRM) (RER), 2017 WL 2778029, at *1 (E.D.N.Y. June 26, 2017). The lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate.

As of September 25, 2024, Plaintiffs' counsel has billed 194.06 hours on this matter, amounting to $89,525.50 in fees if calculated pursuant to the lodestar. *See* Crabill Decl. ¶¶ 53-55; Exs. C (Crabill Firm contemporaneous billing records); D (Declaration of Innessa M. Huot at Ex. 1). The lodestar is calculated based on comparable hourly rates for Plaintiffs' counsel that have been approved by other courts in the Second Circuit and across the country. Crabill Decl. ¶ 56-57; *see, e.g., Alam v. O&S Gen. Cont. Corp.*, 18-CV-2069, ECF Nos. 19-4 at 7; 20 (E.D.N.Y. Aug. 17, 2018) (approving hourly rates of $600 for Ms. Huot, $450 for senior associates, and $310 for paralegal); *Ayodele et al v. Avalon Homecare LLC et al.*, 23-cv-09368, ECF No. 40 (S.D.N.Y. Apr. 12, 2024) ($575 for Ms. Huot, $475 for senior associates, and $195 for Mr. Gonzales); *Conte v. Metro. Transp. Auth.*, 21-CV-2516, ECF No. 120 (S.D.N.Y. Sept. 14, 2023) ($575 for Ms. Huot, $500 for Mr. Hartzband, $475 for senior associates, and $195 for Mr. Gonzales); *Guttentag, et al. v. Ruby Tuesday, Inc.*, 12 Civ. 3041, ECF Nos. 107-8; 109 (S.D.N.Y. Oct. 2, 2014) ($875-$625 for partners, $585-$555 for senior attorneys, $390-$375 for junior associates, and $315-$245 for paralegals); *Aguilar, et al. v. Kimo Mgmt. Grp. Corp.*, 21-cv-7537, ECF No. 70 (S.D.N.Y. Nov, 13, 2023) ($550 for Ms. Huot and Mr. Hartzband, $450 for associates, and $175 for paralegals); *Mercado, et al. v. Metro. Transp. Auth., et al.*, 1:20-cv-6533, ECF No. 128 at 6 (S.D.N.Y July 5, 2023) ($550 for Ms. Huot and Mr. Hartzband, $400 for Taylor Crabill, and $175 for paralegals); *Hall v. J. Caiazzo Plumbing & Heating Corp. et al*, No. 21 Civ. 05416 (ENV)(SJB) (E.D.N.Y. Sep 29, 2021) ($550 for Ms. Huot, $500 for Mr. Hartzband, $375 for Mr. Crabill, and $175 for paralegals); *Porrini v. McRizz, LLC, et al.*, No. 19-cv-03979(ARR)(RML), ECF Nos. 53-1 ¶ 61; 55 (E.D.N.Y. Jul. 10, 2019) ($550 for Ms. Huot, $450 for Mr. Hartzband, $375 for Mr. Crabill, and $175 for paralegals); *Foster, et al. v. L-3 Commc'ns EoTech, Inc., et al.*, No. 15-cv-03519- BCW, ECF Nos. 140-1; 155 (W.D. Mo. July 7, 2017) ($550 for Ms. Huot and $375-$310 for paralegals*); Run Them Sweet, LLC v. CPA Global, LTD, et al.*, No. 1:16-cv-1347, ECF Nos. 108- 4 ¶ 4; 114 (E.D. Va. Oct. 6, 2017) ($550 for Ms. Huot); *Goins v. BB&T Securities, LLC, et al.*, No. 1:20-cv-09891, ECF No. 38 (PGG)(JLC) ($500 for Ms. Huot, $450 for Mr. Hartzband, $350 for Mr. Crabill, and $175 for paralegals); *see also Zigos v. Mayshad Choice Inc., et al.*, No. 20-cv-09203-ALC, ECF Nos. 26 ¶ 55; 28 (S.D.N.Y. May 21, 2021); *Betesh v. Onia, LLC, et al.*, No. 20 Civ. 9770 (AT), ECF Nos. 31-1 ¶ 42; 35 (S.D.N.Y. Oct. 12, 2021); *Vitale, et al. v. Mystique Hookah Lounge, Inc., et al.*, No. 2:20-cv-01091-JMA-AKT, ECF No. 28 ¶ 42 (E.D.N.Y. Mar. 30, 2021); *Molina, et al. v. Huaxcuaxtla Rest. Corp., et al.*, No. 1:20-cv-02481-RWL, ECF Nos. 74-1 ¶ 53; 76 (S.D.N.Y.



Feb. 25, 2021); *Sanchez, et al. v. Stonehouse Rest LLC, et al.*, No. CV-18-1397 (ST), ECF Nos. 75 ¶ 67; 77 (E.D.N.Y. Feb. 4, 2021); *Kuznetsov, et al. v. Bravura Glass and Mirror Corp., et al.*, No. 20 Civ. 726 (LB), ECF Nos. 23 ¶ 51; 25 (E.D.N.Y. Dec. 23, 2020); *Feliciano, et al. v. Metro. Transp. Auth., et al.*, No. 18 Civ. 26 (VSB), ECF Nos. 97-1 ¶ 60; 99 (S.D.N.Y. May 6, 2020); *Pazdniakou v. CoolTech Mech. Corp.*, et al., No. 1:19-cv-5434 (SJB), ECF Nos. 18 ¶ 49; 21 (E.D.N.Y. Mar. 23, 2020); *Griffin*, No. 5:16-cv-354 (LEK/ATB), ECF Nos. 104-4 ¶ 3; 109 ¶¶ 12-13, 18 (N.D.N.Y. Nov. 15, 2018); *Morrell, et al. v. NYC Green Transp. Grp., LLC, et al.*, No. 18-cv-00918, ECF No. 129-1 ¶ 31 (E.D.N.Y. May 8, 2019); *Georgiev, et al. v. Shapiro, et al.*, No. 19 Civ. 122 (JPO), ECF Nos. 41 ¶ 24; 47 (S.D.N.Y. Oct. 2, 2019); *Ackerman v. N.Y. Hosp. Med. Ctr. of Queens*, No. 702965/2013, NYSCEF Nos. 71 ¶ 26; 80 ¶ 7-8 (N.Y. Sup. Queens Cty. June 24, 2020); *Reeves, et al. v. La Pecora Bianca, Inc., et al.*, No. 151153/2018, NYSCEF Nos. 57; 108 (N.Y. Sup. N.Y. Cty. June 11, 2020).

Additionally, courts have previously noted that "[a] reasonable hourly rate is 'the rate a paying client would be willing to pay.'" *HVT, Inc, v. Port Authority of N.Y. and N. J.*, No. 15 Civ. 5867 (MKB) (VMS), 2018 WL 6079932, at *1 (E.D.N.Y. Nov. 21, 2018) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). A meaningful portion of the Faruqi Firm's practice is non-contingency cases where clients pay or have paid on an hourly basis at the following hourly rates: $600 for Ms. Huot, $550 for Mr. Hartzband, $475 for Mr. Crabill, and $195 for paralegals. Crabill Decl. ¶¶ 59-63. At the Crabill Firm, Ms. Crabill charges a rate of $500 for hourly work. *Id.* ¶ 58. Working on the instant matter on a contingency basis required the Faruqi Firm and the Crabill Firm to expend considerable time and resources that could have been otherwise allocated towards non-contingency, hourly work. *Id.* ¶ 64. Nevertheless, Plaintiffs' counsel undertook prosecuting this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. *Id.* ¶ 65.

The requested fee award of $34,996.41 is notably less than Plaintiffs' counsel's lodestar of $89,525.50. *Id.* ¶ 66. In other words, Plaintiffs' counsel requests no multiplier whatsoever and, in fact, requests a **_negative_** multiplier. *Id.* ¶ 37. Indeed, the requested fee award is only 39.1% of Plaintiffs' counsel's actual lodestar, and as such, the requested attorneys' fees are reasonable. *Id.*; *see, e.g.*, *Silverstein v. AllianceBernstein L.P.*, No. 09-CV-5904 (JPO), 2013 WL 7122612, at *9 (S.D.N.Y. Dec. 20, 2013) ("Applying the lodestar method as a 'cross check,' the Court finds that the fee that Class Counsel seeks is reasonable and does not represent an exorbitant multiplier—indeed, there is no multiplier.") (citation omitted) (collecting cases); *Flores*, 2014 WL 321831, at *9 (same); *Diaz v. E. Locating Serv. Inc.*, No. 1:10-cv-04082-JCF, 2010 WL 5507912, at *8 (S.D.N.Y. Nov. 29, 2010) (same); *see also In re Blech Securities Litig.*, 94 Civ. 7696 (RWS), 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) (approving one-third contingency fee because "[t]he fee requested is less than the cumulative lodestar.").

Further, Plaintiffs request the Court approve reimbursement of costs and expenses incurred by Plaintiffs' counsel in furtherance of this matter. Crabill Decl. ¶ 68. Plaintiffs' counsel has incurred $2,320.43 ($675.00 (Crabill Firm Expenses) + $1,645.43 (Faruqi Firm Expenses)) in actual costs and expenses for filing fees, service costs, mediation expenses, discovery related costs, and postage. Crabill Decl. ¶¶ 69-70. These expenses are reasonable, as well as incidental and



necessary to the litigation; therefore, their reimbursement under the Settlement should be approved. Crabill Decl. ¶ 71; *see Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)).

Accordingly, Plaintiffs' request for approval of $34,996.41 in attorneys' fees and $2,320.43 in unreimbursed expenses, for a total of $37,316.84 as compensation for Plaintiffs' counsel's work and their costs in this matter, is reasonable.

Defendants do not take a position as to the reasonableness of the hourly rate sought.

### V.     **CONCLUSION**

Accordingly, Plaintiffs request that the Court approve the Settlement, So Order the Stipulation and [Proposed] Order Approving the Settlement and Dismissing the Case, and have it entered on the docket by the Clerk of the Court.

We thank the Court for its time and attention to this matter.

Respectfully Submitted,

Taylor J. Crabill